UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID WAITMAN,

        Plaintiff,                                    Hon. Janet T. Neff

v.                                                      Case No. 1:14-CV-162

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.[1] Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

---

[1] Plaintiff also applied for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Plaintiff's DIB claim was denied at the outset on the ground that Plaintiff "d[id] not have enough work credits to qualify for [DIB] benefits." (Tr. 79). Plaintiff does not appear to have challenged that determination. Thus, the only issue before the ALJ was Plaintiff's claim for SSI benefits.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 47 years of age on his alleged disability onset date. (Tr. 126). He possesses an Associates Degree, but does not have any past relevant work. (Tr. 25, 38). Plaintiff applied for benefits on April 19, 2011, alleging that he had been disabled since April 19, 2011, due to depression, anxiety, aches, hepatitis C, high blood pressure, and arthritis of the hip. (Tr. 126-38, 151). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 61-125). On August 9, 2012, Plaintiff appeared before ALJ Lawrence Blatnik with testimony being offered by Plaintiff and a vocational expert. (Tr. 32-60). In a written decision dated November 29, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 14-26). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a

---

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

Under federal law, an individual "shall not be considered to be disabled" if "alcoholism or drug addiction" is found to be "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). In order

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to determine whether alcoholism or drug addiction constitutes a "contributing factor material" to the finding of disability, the ALJ must determine whether the claimant would be disabled "if [he] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535, 416.935; *see also, Johnson-Hunt v. Commissioner of Social Security*, 500 Fed. Appx. 411, 415 (6th Cir., Sept. 14, 2012).

The ALJ determined that Plaintiff suffered from: (1) osteoarthritis; (2) hepatitis C; (3) obesity; (4) bipolar disorder; and (5) a long history of alcohol/substance abuse, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-18). The ALJ determined that "considering all the claimant's impairments, including the alcohol/substance abuse disorder, the claimant is unable to make a successful vocational adjustment to work that exists in significant numbers in the national economy." (Tr. 22).

The ALJ found that if Plaintiff stopped abusing drugs and alcohol, he would still suffer from "a severe impairment or combination of impairments," but that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 22-23). The ALJ further determined, however, that if Plaintiff stopped abusing drugs and alcohol he retained the ability to perform light work subject to the following limitations: (1) he can occasionally lift 20 pounds and frequently lift 10 pounds; (2) during an 8-hour workday, he can stand, walk, and sit for six hours each; (3) he requires a sit-stand option which permits him to change position every 30-45 minutes; (4) he can occasionally climb ramps/stairs, but can never climb ladders, ropes, or scaffolds; (5) he can occasionally balance; (6) he can frequently use his left lower

extremity to operate foot controls; (7) he cannot perform work involving dangerous or unprotected machinery or work at unprotected heights; (8) he can perform simple, unskilled work with an SVP rating of 1 or 2;[3] and (9) he is able to understand, remember, and carry out only short, simple instructions. (Tr. 23-24).

Because Plaintiff has no past relevant work, the ALJ questioned a vocational expert to assess whether there existed work which Plaintiff would be able to perform were he to stop using drugs and alcohol. A vocational expert testified that there existed in the lower peninsula of Michigan approximately 12,590 jobs which an individual with such an RFC could perform, such limitations notwithstanding. (Tr. 54-57). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

I.    **The ALJ Properly Assessed the Medical Evidence**

On April 16, 2012, Maureen Fabiano, M.A., L.L.P., completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 584-85). Plaintiff's abilities were characterized as "markedly limited" in nine categories, "moderately limited" in six categories, and "not significantly limited"

---

[3] SVP ratings measure the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* Dictionary of Occupational Titles, Appendix C, available at http://www.occupationalinfo.org/appendxc_1.html (last visited on February 3, 2015). A job with an SVP rating of 1 corresponds to a job that a typical worker can perform after a "short demonstration only." A job with an SVP rating of 2 corresponds to a job that a typical worker can perform after "anything beyond short demonstration up to and including 1 month." *Id.*

in five categories.[4] (Tr. 584-85). The form that Fabiano completed stated that "your opinion must exclude consideration of any disability caused by alcohol or drug abuse." (Tr. 584). Thus, Plaintiff asserts that Fabiano's opinion demonstrates that he is unable to work even if his substance abuse is not taken into consideration.

The ALJ afforded "some weight" to Fabiano's assessment, but nevertheless concluded that the limitations identified by Fabiano were "largely attributable to" Plaintiff's substance abuse and that in the absence of such Plaintiff "would be capable of unskilled work." (Tr. 25). Plaintiff alleges that he is entitled to relief because the ALJ failed to articulate good reasons for his decision to afford less than controlling weight to Fabiano's assessment.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is

---

[4] The form in question defined markedly limited as "75 percent or more limitation," moderately limited as "50 percent limitation," and "not significantly limited" as "25 percent limitation." (Tr. 584).

unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered

those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

As previously noted, the ALJ found that if Plaintiff's substance abuse is taken into consideration Plaintiff is disabled, but that in the absence of his substance abuse Plaintiff is capable of performing a range of light work. Thus, the issue presented by this particular claim is not whether Plaintiff is impaired to the extent articulated by Fabiano, but rather whether he would be impaired to the extent alleged absent his substance abuse.

The evidence reveals that during the majority of the time period presently at issue, Plaintiff was unable to both maintain sobriety and take his prescribed medication. On August 23, 2011, Plaintiff reported that he was experiencing manic symptoms, but also reported that he was smoking marijuana and taking "skittles."[5] (Tr. 518). On August 29, 2011, Fabiano reported that "it is unclear if [Plaintiff] is taking any prescribed psychiatric medication." (Tr. 519). On September 19, 2011, Fabiano reiterated her concern that Plaintiff did not appear to be taking his prescribed medication. (Tr. 522). On November 3, 2011, Fabiano reported that Plaintiff was experiencing a manic episode, but "is not believed to be taking [his] psychiatric medication." (Tr. 526). On December 27, 2011, Fabiano reported that Plaintiff recently "overtook" one of his medications and "drank alcohol." (Tr. 535). On March 22, 2012, Fabiano reported that Plaintiff was "struggling with depressive symptoms," but "drank on St. Patrick's Day" and "has not been taking his medication." (Tr. 595). On April 26, 2012, Plaintiff reported to the emergency room having consumed alcohol and cocaine "just prior to arrival." (Tr. 709). On May 4, 2012, Plaintiff reported that he "has a hard

---

[5] Skittles is slang for the drug contained in over-the-counter cough suppressants. *See* Teen Drug Slang: Dictionary for Parents, available at http://www.webmd.com/parenting/features/teen-drug-slang-dictionary-for-parents (last visited on February 5, 2015).

time staying clean." (Tr. 601). Treatment notes dated May 20, 2012, indicate that Plaintiff consumed alcohol the previous day. (Tr. 727).

Nevertheless, there does exist evidence that when Plaintiff remained sober and took his prescribed medication, his ability to function was greatly improved and consistent with the aforementioned RFC determination. On April 7, 2011, Fabiano reported that Plaintiff was "struggling with depressive symptoms." (Tr. 502). On May 26, 2011, however, Fabiano reported that Plaintiff was experiencing "less irritability and fewer depressive symptoms" since beginning his "new medication regimen." (Tr. 509). On February 15, 2012, Fabiano reported that Plaintiff was "sustaining his sobriety" and "doing relatively well" with "more stable" moods. (Tr. 592). Plaintiff also indicated at the administrative hearing that he responds favorably to treatment and sobriety. (Tr. 44, 50-51).

In sum, the ALJ's conclusion that Fabiano's assessment is reflective of Plaintiff's pattern of substance abuse and, therefore, does not reflect the extent to which he could function in the absence of substance abuse is supported by substantial evidence. Accordingly, this argument is rejected.

**II.        The ALJ did not Err by Failing to Issue a Subpoena**

On June 24, 2011, Plaintiff participated in a consultive examination conducted by Jonathan Shy, Ph.D. (Tr. 413-19). The doctor concluded that Plaintiff "exhibited Moderately Severe psychosocial stressors associated with a limited vocational history, history of significant alcohol

dependence, cannabis dependence, reduced social skills, and medical problems." (Tr. 415). Plaintiff's GAF score was rated as 53.[6]

On February 15, 2012, several months before the administrative hearing, Plaintiff submitted to the Office of Disability Adjudication and Review a request to compel testimony from Dr. Shy. (Tr. 580-82). Specifically, Plaintiff wanted Dr. Shy to complete a residual functional capacity form and respond to two interrogatories concerning Plaintiff's ability to work given his alleged emotional limitations. (Tr. 582). Plaintiff's request was not directed to the ALJ assigned to this matter and it appears that the ALJ failed to respond to Plaintiff's request.

At the outset of the administrative hearing, the ALJ asked Plaintiff's counsel whether there were "any procedural matters we need to discuss at this time," to which counsel responded, "I don't believe so." (Tr. 35). Plaintiff did not otherwise pursue the matter with the ALJ. When Plaintiff appealed the ALJ's decision to the Appeals Council he asserted that he was entitled to relief on several grounds, including the ALJ's failure to submit to Dr. Shy the aforementioned interrogatories. (Tr. 192). The Appeals Council rejected this argument, in part, on the ground that Plaintiff failed to renew, at the administrative hearing, his request to submit interrogatories to Dr. Shy. (Tr. 2). Plaintiff now argues that he is entitled to relief because the ALJ failed to submit the interrogatories in question to Dr. Shy.

The regulations applicable to SSI claims provide, in relevant part, that "when reasonably necessary for the full presentation of a case," an ALJ may issue a subpoena to compel

---

[6] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 53 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

certain testimony and/or production of documents. *See* 20 C.F.R. § 416.1450. A claimant is not entitled to a subpoena, rather the matter is left to the discretion of the ALJ. *See Passmore v. Astrue*, 533 F.3d 658, 661-62 (8th Cir. 2008); *Bronzene v. Astrue*, 2012 WL 602142 at *7 (N.D.N.Y., Feb. 23, 2012); *Calvin v. Chater*, 73 F.3d 87, 92 (6th Cir. 1996).

Plaintiff's claim fails for at least two reasons. First, because Plaintiff failed to raise the matter to the ALJ at the administrative hearing, he has waived the issue. *See, e.g., Spuhler v. Colvin*, 2014 WL 4855743 at *22 (E.D. Mich., June 17, 2014). Second, even if Plaintiff is deemed to have not waived this claim, the failure by the ALJ to submit to Dr. Shy the requested interrogatories is harmless. As discussed above, the ALJ's decision turned on whether Plaintiff would be disabled in the absence of his substance abuse. The interrogatories to Dr. Shy did not address this particular issue, but instead merely addressed Plaintiff's functioning in general. Given the ALJ's concession that Plaintiff was, in his current state, unable to work, the Court fails to discern how the ALJ's alleged failure prejudiced Plaintiff or otherwise warrants relief. This argument is, therefore, rejected. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: February 10, 2015                             /s/ Ellen S. Carmody
                                                    ELLEN S. CARMODY
                                                    United States Magistrate Judge